**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| AMIAS A.,[1]<br>Plaintiff, | Case No. 2:25-cv-1031<br>Morrison, C.J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Amias A. brings this action pursuant to 42 U.S.C. §§ 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8) and the Commissioner's response in opposition (Doc. 10).

## I. Procedural Background

Plaintiff protectively filed his application for SSI on October 17, 2023 alleging disability beginning February 14, 2023,[2] due to back pain and injury, depression, post-traumatic stress disorder (PTSD), anxiety, asthma, and anemia. (Tr. 218, 224). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Patrick M. Horan on April 8, 2025. (Tr. 42-68). Plaintiff and a vocational expert (VE) appeared telephonically and testified at the ALJ hearing. (*Id.*). On April 24, 2025, the ALJ issued a decision denying plaintiff's application. (Tr.

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimaant files an SSI application. Thus, the relevant period of consideration in this case begins in October 2023. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [plaintiff] filed his protective application.").

23-36). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 7, 2025. (Tr. 1-5).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since October 17, 2023, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: post[-]traumatic stress disorder (PTSD); depressive disorder; anxiety disorder; attention deficit hyperactivity disorder (ADHD); [and] borderline personality disorder (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] could only understand and remember simple and detailed but not complex instructions without fast paced production requirements. He could interact with supervisors frequently but coworkers and the public only occasionally and could deal with changes to a routine work setting only occasionally.
>
> 5. [Plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[3]

[3] Plaintiff's past relevant work was as a reception clerk, which is sedentary, semi-skilled work. (Tr. 34).

> 6. [Plaintiff] was born [in] … 2003 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. [Plaintiff] has at least a high school education (20 CFR 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969a).[4]
>
> 10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since October 17, 2023, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-29) (footnotes added).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938)).

---

[4] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative occupations such as office helper (10,000 jobs in the national economy), marker (165,000 jobs in the national economy), or small parts assembler (26,000 jobs in the national economy). (Tr. 34-35, 63-64).

Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)).

**D. Specific Errors**

Plaintiff contends that the ALJ erred in determining his residual functional capacity (RFC). Plaintiff argues that the mental portion of the RFC finding is unsupported by substantial evidence because the ALJ erred in evaluating the medical source opinion of consultative psychologist David NieKamp, Psy.D, and the prior administrative medical findings of Vicki Warren, Ph.D., and Kevin Edwards, Ph.D., all of whom found plaintiff limited in all four mental health areas of functioning. (Doc. 8 at PAGEID 1165-72). The Commissioner counters that the ALJ reasonably evaluated the medical evidence in accordance with the requirements of 20 C.F.R. § 416.920c. (Doc. 10 at PAGEID 1177-83).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his case file. (*Id.*). The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.946(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 416.945(a)(3), 416.946(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[5] including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c.

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict

---

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

The ALJ's evaluation of Dr. NieKamp's opinion is supported by substantial evidence. David NieKamp, Psy.D., interviewed plaintiff via teleconference for approximately 60 minutes. (Tr. 693). Dr. NieKamp stated that plaintiff was oriented to person, place, time, and situation; displayed intact remote and immediate memory; displayed appropriate thought processes for a person his age; and operated "within/below expected developmental levels." (Tr. 698). He concluded that plaintiff suffers from PTSD. (*Id.*). Dr. NieKamp opined that plaintiff is not likely able to understand, carry out, and remember instructions; not likely able to sustain

concentration and persist in work-related activity at a reasonable pace; not likely able to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public; and not likely able to deal with normal pressures in a competitive work setting. (Tr. 697-98).

The ALJ found Dr. NieKamp's opinion unpersuasive. (Tr. 33). Specifically, the ALJ found the opinion "not supported by his own examination or clinical observations" because Dr. NieKamp observed that plaintiff exhibited no "psychomotor agitation or retardation, maintained appropriate eye contact, spoke clearly with good rate and rhythm," "was appropriately dressed," and "able to complete activities of daily living independently." (Tr. 34, citing Tr. 693, 697[6]). The ALJ found these observations at odds with Dr. NieKamp's "extreme" conclusions regarding plaintiff's inability to function. (Tr. 33-34).

As for consistency, the ALJ noted that Dr. NieKamp "appears to have relied heavily on [plaintiff's] self-reported symptoms and limitations, which are not entirely consistent with the evidence." (Tr. 34). Specifically, the ALJ found Dr. NieKamp's opinion inconsistent with plaintiff's "routine and conservative" treatment history, plaintiff's "largely intact" mental status exams despite depressed or anxious moods or persistent symptoms, and the opinions of state agency psychologists Vicki Warren, Ph.D., and Kevin Edwards, Ph.D., "which likewise found Dr. Nie[K]amp's opinion unpersuasive." (Tr. 34, citing Tr. 82 and 91).

Plaintiff contends—without citation to authority—that the ALJ improperly found that plaintiff's routine and conservative medical treatment was inconsistent with Dr. NieKamp's opinion. (Doc. 8 at PageID 1168). However, courts routinely uphold an ALJ's consideration of

[6] Although the ALJ referenced Dr. NieKamp's report generally, specific page citations are provided by the Court.

the conservative nature of a claimant's treatment as one factor in evaluating a claimant's subjective symptoms. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine and/or conservative treatment for allegedly disabling impairments supported ALJ's assessment) (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment)); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non-aggressive treatment."). As the ALJ noted elsewhere in his decision, plaintiff received routine and conservative treatment, which was generally effective in alleviating his symptoms. (Tr. 32, citing Tr. 701-811, 859-70, and Tr. 1124). In addition, the ALJ further explained that plaintiff has not required crisis stabilization, emergency room treatment, or inpatient hospitalization for psychiatric impairments. (Tr. 32). The Court appreciates that the extent of treatment pursued does not necessarily translate to the extent to which a claimant is functionally limited. Nevertheless, the Court is not persuaded that the ALJ's consideration of plaintiff's level and type of treatment was inappropriate in evaluating the severe limitations Dr. NieKamp identified.

Plaintiff next contends that the ALJ's reliance on "mostly normal mental status findings" was "irresponsible" because it failed to consider fluctuations in plaintiff's mental health symptoms. (Doc. 8 at PageID 1169). The Court disagrees. The ALJ discussed extensively plaintiff's fluctuating mental health symptoms in determining the RFC. (Tr. 30-33). Indeed, even the examples plaintiff cites in support of this contention demonstrate mostly normal mental status findings. For example, plaintiff identifies a July 26, 2024 notation from Andrew Gadek, APRN, that states plaintiff's mood was depressed and anxious, and his affect was constricted.

(Doc. 8 at PageID 1169, citing Tr. 722). However, that same record also provides that plaintiff's appearance was "appropriate for circumstance and neat;" eye contact was good; motor activity was normal; speech was unremarkable; thought content was unremarkable; thought process was goal-directed and linear; perception was unremarkable; demeanor, insight, and judgment were appropriate; and plaintiff was fully oriented with grossly intact memory. (Tr. 722). Similarly, plaintiff cites to a biopsychosocial assessment by Emily Hertweck, LSW, performed October 2, 2024, in which she noted plaintiff's appearance to be "disheveled and unkempt." (Doc. 8 at PageID 1169, citing Tr. 890-91). However, Ms. Hertweck also noted that plaintiff spent his free time playing games, spending time with friends and family, listening to music, and painting or engaging in craft projects. (Tr. 890). She further described plaintiff's attitude as cooperative with normal behavior, clear speech, appropriate affect, logical thought process, appropriate thought content, and fully oriented to person, place, and time. (Tr. 890-91). The examination that plaintiff cites for plaintiff being "fatigued with an anxious affect," (Doc. 8 at PageID 1169, citing Tr. 928), also indicates that plaintiff suffers from no suicidal ideation, paranoia, hallucinations, or delusions; has logical, coherent and appropriate thought process; good recent, intermediate, and remote memory; adequate attention and concentration; average general fund of knowledge; and appropriate judgment and insight. (Tr. 928-930). The other two examinations plaintiff claims to be inconsistent with the ALJ's evaluation occurred in 2022—well before plaintiff applied for SSI. (Doc. 8 at PageID 1169, citing Tr. 336 and Tr. 318).

In addition, the ALJ agreed that plaintiff's mental impairments—including PTSD, depression, anxiety, and ADHD—could reasonably be expected to cause the alleged symptoms. (Tr. 30). Although he found the limiting effects of the symptoms "not entirely consistent with the medical evidence," the ALJ limited plaintiff's RFC to accommodate his inability to

understand complex instructions, difficulty with fast paced production requirements and changes to a routine work setting, and challenges interacting with coworkers and the public. (Tr. 30-31).

Next plaintiff contends that the ALJ erroneously found the state agency psychologists' opinions inconsistent with Dr. NieKamp's opinion even though all three psychologists concluded that plaintiff suffered from PTSD and had limitations in all four functional areas (understanding, remembering or applying information; interacting with others; concentrating persisting or maintaining pace; and adapting or managing oneself). (Doc. 8 at PageID 1169-70). First, it must be noted that the state agency psychologists found limitations in only three of the four functional areas. (Tr. 82-83, 91-92). Second, the ALJ agreed that plaintiff has limitations due to his mental impairments. However, as the ALJ accurately noted, the psychologists' opinions diverge considerably as to the severity of those limitations. (Tr. 33-34). The state agency consultants found plaintiff moderately limited in his ability: to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule and maintain regular attendance and punctuality within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at consistent pace without requiring unreasonable rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to supervisors' criticism; to get along with coworkers; to maintain socially appropriate behavior and basic standards of neatness and cleanliness; and to respond appropriately to changes in the work setting. (Tr. 82-83, 92). The state agency consultants found no significant limitations in plaintiff's ability: to carry out simple instructions; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to ask simple questions or request assistance; to be

aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently. (Tr. 82-83, 92). The ALJ found the state agency psychologists' findings persuasive "insofar as they indicate that there are indeed some limitations in the areas of: interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself." (Tr. 33). To accommodate those limitations, the ALJ incorporated into plaintiff's RFC a no complex instructions limitation, a no fast paced production requirement, only occasional interactions with coworkers and the general public, and only occasional changes to a routine work setting. (Tr. 30). Dr. NieKamp alone found plaintiff far more limited than either the ALJ or the state agency consultants (Tr. 697-98) which supports the ALJ's conclusion that the state agency psychologists "likewise found Dr. Nie[K]amp's opinion unpersuasive." (Tr. 34).

Plaintiff's final argument—that the ALJ's limited and selective review of Dr. NieKamp's opinion invalidates the ALJ's supportability analysis (Doc. 8 at PageID 1170-71)—also lacks merit. "When a medical provider's opinion is largely based on a plaintiff's own subjective complaints, the ALJ does not err in finding it unsupported." *Brooke L. v. Comm'r of Soc. Sec.*, No. 1:25-cv-622, 2026 WL 1208756, at *5 (S.D. Ohio May 4, 2026) (citing *Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 2688302, at *3 (6th Cir. 2024)). Other than the results of standard psychological tests (recalling a series of numbers forward and backward, identifying current events or names of cities, performing basic mathematical calculations, and counting backward from 100 by sevens), Dr. NieKamp's report simply reiterates plaintiff's self-reports without additional explanation or elucidation. (Tr. 697-98). For example, when asked to give a "Functional Assessment Opinion" on plaintiff's ability to "[u]nderstand, carry out, and remember instructions (both one-two step and complex)," Dr. NieKamp writes:

a. [Plaintiff] is not likely able to understand, carry out, and remember instructions.
b. *He states*: simple yes, but only sometimes for complex instructions. It depends on the situation.

(Tr. 697) (emphasis added). The same pattern holds for Dr. NieKamp's conclusions regarding plaintiff's ability to sustain concentration and work at a reasonable pace; to interact effectively and consistently with supervisors, coworkers, and the public; and to manage the ordinary pressures of a competitive workplace—each is likewise followed by a "He states" recitation of plaintiff's own account of his functioning. (Tr. 697-98). Because Dr. NieKamp's opinion is based primarily on plaintiff's subjective complaints and because the ALJ reasonably examined the evidence and explained why he found the opinion unsupported and inconsistent with other evidence in the record, the ALJ's evaluation is supported by substantial evidence, and plaintiff's alleged error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's statement of errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 6/29/2026

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

AMIAS A.,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 2:25-cv-1031
Morrison, C.J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).